IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| NORTHGATE PROCESSING, INC. and PATRICK COPPLE, <br><br>Plaintiffs, <br><br>v. <br><br>SPIRONGO SLAG MCDONALD, L.L.C., SPIRONGO SLAG, LLC, and SPIRONGO MCDONALD, LLC, <br><br>Defendants. | Civil Action No. 15-1116 <br>Judge Nora Barry Fischer |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

In this case, Plaintiffs Northgate Processing, Inc. ("Northgate") and its president, Patrick Copple ("Copple"), bring common law breach of contract, unjust enrichment and conversion claims against Defendants Spirongo Slag McDonald, L.L.C., Spirongo Slag, L.L.C. and Spirongo McDonald, LLC, arising from and/or related to a contractual agreement regarding Northgate's processing of scrap iron and slag reserves located on a property owned by one of the Defendants in Trumbull County, Ohio.  (Docket No. 1).  Presently before the Court are Defendants' Motion to Dismiss for Lack of Jurisdiction and Improper Venue, (Docket No. 8), their Brief in Support, (Docket No. 10), Plaintiffs' Response and Brief in Opposition thereto, (Docket Nos. 12, 13), and Defendants' Reply Brief, (Docket No. 14).  The parties have also submitted affidavits of individuals involved in the contract negotiations which the Court has reviewed and considered.  (*See* Docket Nos. 10-1, 13-1, 13-2, 14-1).  For the following reasons, Defendants' Motion [8] is granted to the extent that this Court will transfer the matter to the United States District Court for

1

the Northern District of Ohio, Youngstown Division.

## II. BACKGROUND

Defendants Spirongo Slag LLC and Spirongo McDonald LLC are Ohio-based limited liability companies that were formed independently for the purpose of owning two separate parcels of real estate in Trumbull County, Ohio. (Docket No. 10-1 at ¶¶ 3-5). According to the President of both entities, George Bakeris, only Spirongo Slag LLC (hereinafter, "Spirongo Slag") has an interest in the property at issue in this case located at 100 2nd Street, McDonald, Ohio, which is a former dump site for scrap iron and slag. (*Id.* at ¶¶ 4, 10). Bakeris states that these entities do not advertise, have no websites and do not conduct any business, sell any goods, provide any services or own any property in Pennsylvania. (*Id.* at ¶¶ 6-9). These entities are also not registered to do business within the Commonwealth's borders. (*Id.* at ¶ 7).

Northgate is a New Castle, Pennsylvania-based business. (Docket No. 1). Its President, Copple, engaged Ohio resident James Huff to act as an intermediary to set up a transaction with Spirongo Slag to authorize Northgate to enter the 100 2nd Street property, process scrap iron and slag and sell these materials to third parties. (Docket Nos. 13-1; 13-2). Huff was also involved with Copple's negotiations for Northgate's sales to these unidentified third parties. (Docket No. 13-2 at ¶ 7). Huff does not have any independent business relationship with the Defendants or Bakeris. (Docket No. 14-1 at ¶¶ 3-10).

The facts surrounding the contract negotiations in this case are uncontested. (*See* Docket Nos. 10-1; 13-1; 13-2; 14-1). Copple approached Bakeris in Ohio with a proposal for Northgate to process the slag and scrap iron and sell it to third parties in exchange for a fee to Spirongo Slag. They met in person at the property and also at Bakeris' office in Lordstown, Ohio. (Docket No. 10-1 at ¶ 11). Huff attended a few of these in person meetings which took place in Ohio.

(Docket No. 14-1 at ¶ 4).  Copple and Huff met separately in Pennsylvania a total of three times, including a meeting in March of 2015 at the Marriott in Moon Township, Pennsylvania, during which they "discussed in detail the contract terms as well as the contracts [Copple] was negotiating with customers for the slag."  (Docket Nos. 13-1 at ¶ 9; 13-2 at ¶ 7).  No representatives of Defendants were present at any of the in-person meetings held in Pennsylvania between Copple and Huff.  (*Id.*).  Outside of these meetings with Copple, Huff was apparently located in Ohio at all other times relevant to this transaction.  (Docket No. 13-2 at ¶ 4).  Further, there is no evidence of any telephone, email, letter or other communications regarding this deal indicating that the transaction between Northgate and Spirongo Slag was negotiated across state lines, i.e., Pennsylvania and Ohio.  (*See* Docket Nos. 10-1; 13-1; 13-2; 14-1).  Indeed, Spirongo Slag never sent any correspondence to Copple or Northgate or received any payments from them for scrap iron or slag and/or equipment leased from Spirongo Slag.  (Docket No. 10-1 at ¶¶ 20-22).

The Materials Recovery Agreement was prepared by Huff (or Northgate) and hand-delivered by Copple to Bakeris in Ohio.[1]  (Docket No. 1-1; 10-1 at ¶¶ 12-13).  It was executed by Bakeris and Copple, on behalf of their respective entities, on May 1, 2015, at the property.  (Docket No. 1-1).  Huff signed as a witness to the signatures of both Bakeris and Copple.  (*Id.* at 4).  The terms of the contract are straightforward as the Seller, Spirongo Slag, agreed to permit the Buyer, Northgate, to process the scrap iron and slag found at the McDonald, Ohio property and sell it to third parties in exchange for a payment to Spirongo Slag of a 40 percent (40%) share of all gross proceeds generated by Northgate from such sales.  (*Id.* at 1, ¶ 2).  The

---

[1] The parties acknowledge that the Materials Recovery Agreement erroneously lists Spirongo Slag McDonald, L.L.C. as the "seller" and agree that this is a non-existent entity.  (*See* Docket No. 1 at ¶ 10; Docket No. 10-1 at ¶¶ 5, 14).  Nevertheless, Plaintiffs have named Spirongo Slag McDonald, L.L.C. as a defendant in this case.  (Docket No. 1).  The transferee court may wish to discuss with the parties whether the caption should be amended.

payments were due to be made to Spirongo Slag within thirty (30) days after Northgate had shipped such materials to its own buyers. (*Id.*). The agreement had a one-year term commencing on the date of execution, May 1, 2015, and ending on April 30, 2015. (*Id.* at ¶ 2). The choice of law provision in the contract states that "[t]his Agreement shall be construed under the laws of the State of Ohio." (*Id.* at ¶ 10). Further, Northgate agreed to comply with all federal, state or local laws surrounding its operations on the McDonald, Ohio property, particularly as to any hazardous materials moved about the site. (*Id.* at ¶¶ 4, 5, 7).

After execution, Copple leased certain equipment that he personally owned to Northgate which then moved such equipment to the property in Ohio and started to process the scrap iron and slag to prepare it for resale. (Docket No. 1 at ¶¶ 13-16). Northgate took efforts to set up such third party sales. (*Id.* at ¶ 14). In July of 2015, Bakeris and Copple met in person at the property at which time Spirongo Slag terminated the contract. (Docket No. 10-1 at ¶ 24). Spirongo Slag subsequently refused to permit Northgate to have access to the property and/or to remove its equipment from the property. (Docket No. 1 at ¶¶ 16-17). Bakeris claims that Spirongo Slag's termination of the contract was justified by the failure of Northgate to pay the required fees for scrap iron and slag it sold to third parties during the operative period of the agreement. (Docket No. 10-1 at ¶ 24). Of course, Plaintiffs maintain that they have fully complied with their contractual duties. (Docket No. 1 at ¶ 15).

In their Complaint, Plaintiffs seek damages and other relief arguing that Defendants breached the contract, were unjustly enriched by selling scrap iron and slag that Northgate had processed but was not able to sell prior to the termination of the contract and also converted the equipment by refusing to permit Northgate to retrieve it from the property. (Docket No. 1). Rather than address the merits of these claims, Defendants have moved to dismiss this case for

lack of personal jurisdiction, improper venue and, alternatively, moved to transfer venue to the United States District Court for the Northern District of Ohio, Youngstown Division. (Docket Nos. 8, 10, 14). Plaintiffs counter that this Court has personal jurisdiction over Defendants and that venue in this Court is appropriate. (Docket No. 13). They also oppose the requested transfer. (*Id.*).

### III. LEGAL STANDARD

"While the question of personal jurisdiction is typically decided in advance of venue, a court may proceed to the consideration of venue whenever there is sound justification for its doing so." *Centimark Corp. v. Saffold*, Civ. A. No. 07-342, 2007 WL 2317350, at *1 (W.D. Pa. Aug. 8, 2007) (Lancaster, J.) (citing *Leroy v. Great Western United Corp.*, 443 U.S. 173, 180 (1979)). This Court has recognized that such a sound justification arises if the resolution of contested issues on personal jurisdiction is not in the interests of judicial economy, such as when the Court finds that venue should more appropriately lie in another District. *See e.g., Armstrong Dev. Prop., Inc. v. SG Ellison, et al.,* Civ. A. No. 13-1590, 2014 WL 1452322 (W.D. Pa. Apr. 14, 2014).

The discretionary transfer statute, 28 U.S.C. § 1404(a), provides that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented." 28 U.S.C. § 1404(a). It is well established that Defendants bear the burden of proof to demonstrate that a discretionary transfer of venue is appropriate and that this Court retains "broad discretion" to transfer venue when justice so requires. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995); *see also Ogundoju v. Attorney General of U.S.*, 390 F. App'x 134, 137 n.2 (3d Cir. 2010). To determine whether to grant a motion to transfer venue under § 1404(a), the District Court weighs both the private and

5

public interests set forth by the United States Court of Appeals for the Third Circuit in *Jumara v. State Farm Insurance Co.*, 55 F.3d 873, 879 (3d Cir. 1995). The relevant private interests include: (1) each party's forum preference; (2) where the claims arose; (3) the convenience of the parties; (4) the convenience of the witnesses; and (5) the location of the books and records. *Id.* The cited public interests include: (1) the enforceability of the judgment; (2) practical considerations of expediting trial and reducing costs; (3) administrative difficulties in the two fora due to court congestion; (4) the local interest in deciding local controversies; (5) public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law. *Id.* at 879–80.

### IV. DISCUSSION

After carefully balancing the relevant private and public *Jumara* factors, the Court finds that Defendants have met their burden to prove that a transfer of this case to the United States District Court for the Northern District of Ohio, Youngstown Division, is warranted. *Id.* Hence, the Court will exercise its broad discretion and order the requested transfer. *Id.*

With respect to the private factors, Plaintiffs' forum preference is given some weight but it is not lightly disturbed by a transfer to the Federal Court in Youngstown because the uncontested facts demonstrate that its representatives traveled from Pennsylvania to Ohio in an effort to actively solicit the business relationship with Defendants. *See Jumara,* 55 F.3d at 879. Further, the facts are clear that the claims Plaintiffs are pursuing in this case arose, if at all, through conduct which took place (or is still taking place) in Ohio and the connection to Pennsylvania is attenuated, at best. (*See* Docket Nos. 1; 10-1; 13-1; 13-2; 14-1). To this end, all of the following facts are relevant to the breach of contract claim:

- the contract negotiations between Spirongo Slag and Northgate transpired exclusively in Ohio, with the meetings in Pennsylvania **only** being attended by Northgate's President, Copple, and its

    Ohio-based agent, Huff, (Docket Nos. 10-1 at ¶ 11; 14-1 at ¶ 4; 13-1 at ¶ 9; 13-2 at ¶¶ 4, 7);

- the performance under the agreement was to take place at a site in Ohio, with Northgate agreeing to be bound by state and local laws applicable to its activities within that jurisdiction, (Docket No. 1-1);

- the Material Recovery Agreement states that its terms and conditions are to be interpreted under Ohio law, (*id.*);

- there is no evidence that Spirongo Slag sent any correspondence to Plaintiffs in Pennsylvania and/or received any payments from Plaintiffs throughout their relationship, (Docket No. 10-1 at ¶¶ 20-22); and,

- the alleged breach by Spirongo Slag took place at an in-person meeting between the parties' representatives in Ohio, (Docket No. 10-1 at ¶ 24).

*See e.g., Hufnagel v. Ciamacco*, 281 F.R.D. 238 (W.D. Pa. Mar. 20, 2012) (finding that lawsuit involving Pennsylvania horse owner and Ohio horse trainer arising from alleged actions taking place solely within Ohio did not suffice to establish personal jurisdiction over Ohio defendant, making transfer to Ohio Court appropriate); *Carpenters Combined Funds, Inc., ex rel. Klein v. Kelly Systems, et al.*, Civ. A. No. 14-1681, 2015 WL 3457872 (W.D. Pa. Mar. 29, 2015) (transfer was appropriate because the alleged liability occurred within the jurisdiction of the transferee court). Likewise, the alleged unjust enrichment and conversion by Spirongo Slag occurred (and/or is occurring) in Ohio given Plaintiffs' averments that Spirongo Slag has: (1) refused to permit Northgate to enter the property and recover its equipment; and (2) sold scrap iron and slag to third parties that Northgate had processed and prepared for sale without paying Northgate for the work that it performed. (Docket No. 1 at ¶¶ 16-17).

    The remaining factors concerning the convenience of the parties and witnesses, as well as the location of the books and records all favor transfer because the Federal Courthouse in

Youngstown, Ohio is much closer to the headquarters of all of the entities involved in this lawsuit and more easily accessible than downtown Pittsburgh.[2]  *See Jumara*, 55 F.3d at 879.  It strains credulity to suggest that it would be a hardship for the New Castle-based Plaintiffs to litigate this case in a Youngstown, Ohio forum that is 19 miles from Northgate's office rather than commuting south to Pittsburgh for proceedings in this Court that is three times farther away (i.e., 58 miles).[3] It also appears that Defendants' representatives would have to drive past the Youngstown courthouse while travelling to any necessary court proceedings held at this Courthouse in Pittsburgh if venue remains here.  Overall, this Court finds that all of the private *Jumara* factors strongly favor the requested transfer.  *Id.*

The public *Jumara* factors provide additional support for the discretionary transfer.  *Id.* In this regard, any judgment obtained against Defendants, including a monetary award or injunctive relief directing the return of the allegedly converted property, would be more easily enforced in Ohio since Defendants maintain no offices in Pennsylvania and do not operate here. *Id.*  The parties agreed that Ohio law would be utilized in interpreting their contract and while this Court is capable of determining and applying Ohio common law to the parties' claims and defenses in this litigation, the Judges sitting in Ohio have more experience in these areas.  *See E'Cal Corp. v. Office Max, Inc.*, 2001 WL 1167534, at *4 (E.D. Pa. Sept. 7, 2001) (fact that contract was governed by Ohio law favored transfer).  The events of this case are also localized in

---

[2]  "It is well settled that the Court may take judicial notice of geography and other Courts have used Google Maps to estimate distances between two established locations." *Armstrong*, 2014 WL 1452322, at *n.3 (citing *Snyder v. Bertucci's Restaurant Group*, Civ. A. No. 12–5382, at *n.4 (E.D.Pa. Dec. 18, 2012) (further citation omitted) (using Google Maps to estimate distance of 3.6 miles between the Federal Courthouses in Philadelphia, Pennsylvania and Camden, New Jersey); *Heide v. Seven Springs Farm, Inc.*, Civ. A. No. 08–126, 2009 WL 1346035, at *7 (W.D.Pa. May 13, 2009) (Gibson, J) (taking judicial notice of distances from both Somerset and Johnstown to Pittsburgh)).

[3]  The Court notes that the location of the office of Plaintiffs' lawyers in Pittsburgh is not controlling.  *See Shook v. Yellowpages.com, LLC*, No. CIV. A. 11-203, 2011 WL 2621071, at *2 (E.D. Pa. July 1, 2011) (citations omitted) ("the location of counsel's office is immaterial when deciding a motion to transfer venue under § 1404(a).").

Ohio to the extent that the real property is central to the parties' disputes and/or if the scrap iron and slag at issue in the case is subject to state or local environmental laws. *See Armstrong*, 2014 WL 1452322, at *7 ("the most relevant public factor is that local courts have inherent interests in presiding over local controversies and this case involves competing businesses litigating over potential real estate development deals of commercial properties in various 'West Coast' markets."). The costs of this litigation will likely be reduced to some extent by a trial in Youngstown as it would eliminate any unnecessary travel for the parties and witnesses to Pittsburgh. *See Jumara*, 55 F.3d at 879. Finally, the statistics published by the Administrative Office of the United States Courts indicate that both this District and the Northern District of Ohio have busy dockets but this Court has been operating with three empty District Judge seats for the past three years while the Northern District of Ohio has a full complement of District Judges. *See* Federal Court Management Statistics, June 2015, *available at:* http://www.uscourts.gov/statistics-reports/federal-court-management-statistics-june-2015 (last visited 11/18/15). Accordingly, this Court's weighing of the public *Jumara* factors tilts the scales toward a transfer of this case.

### V.     CONCLUSION

Based on the foregoing, Defendants' Motion [8] is granted, in part and denied, in part. Said Motion is granted to the extent that Defendants seek a transfer of this matter pursuant to 28 U.S.C. § 1404(a). Said Motion is denied in all other respects. An appropriate Order transferring this case to the United States District Court for the Northern District of Ohio, Youngstown Division, follows.

*s/Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

9

Date:   November 19, 2015

cc/ecf:  All counsel of record.